IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville October 15, 2013

**MARIO A. REED v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Montgomery County**
**No. 40800325     John H. Gasaway, Judge**

---

**No. M2012-02326-CCA-R3-PC- Filed January 7, 2014**

---

The petitioner, Mario A. Reed, appeals from the denial of post-conviction relief by the Criminal Court of Montgomery County. He was convicted of aggravated burglary, two counts of aggravated rape, and theft under $500, and received an effective sentence of forty years in the Tennessee Department of Correction. In this appeal, he claims that he received ineffective assistance of trial and appellate counsel. Upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. and JEFFREY S. BIVINS, JJ., joined.

B. Nathan Hunt, for the Defendant-Appellant, Mario A. Reed.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Assistant Attorney General; John W. Carney, District Attorney General; and John Finklea, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The petitioner, seventeen years old at the time of the offenses, was transferred from juvenile court to circuit court to be tried as an adult for the underlying offenses. The proof adduced at trial showed that on December 13, 2007, the victim arrived at her apartment and soon discovered that an unknown man, later determined to be the petitioner, was inside. The petitioner, wearing blue pants with an orange stripe, put an automatic pistol to the victim's face, demanded money, and threatened to shoot the victim if she screamed. Before leaving the apartment, the petitioner raped the victim and forced her to perform fellatio. The facts, in pertinent part, taken from this court's opinion from the direct appeal, provide as follows:

[The petitioner] told the victim to disrobe, which she did. He then told her to get on her bed, and she complied. At this point, she noticed the man, who was still brandishing the gun, was wearing gloves.

The man then came toward the bed, lowered his pants slightly, and vaginally penetrated the victim. During this, the man pointed the gun at different places on the victim, either her face or up against her head. The man became angry at his inability to reach climax and, as a result, forced the victim to perform on him oral sex while he held the gun against her head. He told the victim that if he felt her teeth he would shoot her. The victim cooperated and told the man she would comply with his orders and asked him not to shoot her. The man again became angry, and he placed the victim on the bed with one of her legs over his shoulders and again vaginally penetrated her. He asked the victim if she "like [d] it," and, when she responded negatively, he hit her in the head with his gun and then stuck the gun in her mouth, telling her she "better start liking it." The man was still unable to reach climax and had the victim perform oral sex on him again.

. . . .

The victim remained in the closet only briefly, and, when she exited, she noticed her front door was open and assumed the man was gone. She grabbed a robe that was lying on her table and left, running to other apartments trying to find someone at home. The victim ran to another building, and after knocking on the doors of several apartments, she finally found someone in an apartment.

The victim's assailant took several items from her home: a debit card; money; an iPod; two Sony cybershot cameras; an i-Pod docking station; a Fugi camera still in the box; a video i-Pod, also still in the box; a computer; and a cell phone. The victim intended to give the boxed items as Christmas gifts.

When police responded to the victim's call about her attack, they found dirty footprints on the floor and one dirty footprint on the bed. The victim's bedroom window screen had been cut and the screen was folded down. Detectives assumed this was the attacker's point of entry. Outside the apartment, police officers saw footprints containing a "tread" pattern in the mud outside the window and found a lock blade pocketknife lying open on the ground near the window. The footprints outside the victim's apartment went

across the rear of the apartment toward a wooded area behind her apartment complex.

Officers developed [the petitioner] as a suspect in this burglary and rape. When they attempted to apprehend him at the scene of another burglary, he ran. Officers chased and caught [the petitioner]. [The petitioner] admitted that he had gone into the victim's apartment through her window and that he had taken items from her home, but he denied having sex with her. When officers searched [the petitioner's] room, they found a firearm matching the victim's description of the firearm used by her attacker, the victim's i-Pod and i-Pod case, the victim's i-Pod docking station, muddy sneakers, a cybershot camera, and blue sweat pants with an orange stripe. The victim later identified the cybershot camera, her i-Pod, and her i-Pod docking station in a picture of items police confiscated during their search of [the petitioner's] room. The tread of the muddy sneakers appeared to match the footprints found near the victim's apartment. Police also found in [the petitioner's] room a Glock pistol designed to fire a .40 Smith and Wesson cartridge.

The victim underwent an examination shortly after this attack, where samples were taken in an attempt to obtain a DNA profile of her attacker. During this examination, nurses found a one millimeter laceration surrounded by redness and swelling on the left side of the victim's head. Further, there were seven injuries to the victim's genital area: (1) a friction injury similar to rug burn; (2) an entry injury; (3) irritation near the urinary output; (4) tenderness and swelling; (5) two linear lacerations, indicating tearing; (6) a nickel-sized abrasion; (7) an abrasion to the clitoral hood. These injuries were not consistent with consensual sexual intercourse. The samples taken during the victim's examination revealed the presence of [the petitioner's] DNA on the samples taken from inside the victim's vagina.

State v. Mario A. Reed, No. M2009-00887-CCA-R3-CD, 2010 WL 3432663 at * 3-4 (Tenn. Crim. App. Aug 31, 2010), perm. app. denied (Tenn. Jan. 13, 2011). The issues raised on direct appeal and rejected by this court included: (1) whether the juvenile court erred when it transferred his case to the circuit court for him to be tried as an adult; (2) whether the trial court erred when it instructed the jury on aggravated rape; and (3) whether the trial court erred when it sentenced him. On September 2, 2011, the petitioner filed a pro se petition for post-conviction relief and was subsequently appointed counsel. On April 25, 2012, an amended petition for post conviction relief was filed, alleging, inter alia, eighty grounds of ineffective assistance of counsel.

The petitioner and trial counsel were the only witnesses to testify at the July 31, 2012 post-conviction hearing. The petitioner acknowledged that he filed a pro se petition seeking post-conviction relief. In his testimony, the petitioner alleged that the trial court erred in transferring the case from Juvenile Court, in failing to properly instruct the jury concerning aggravated rape, and in imposing an excessive sentencing. He believed that the trial court erred in transferring his case from Juvenile Court because "they didn't give [him] a chance to say [his] part . . . . They just did it and didn't give [him] a chance to see the evidence or nothing like that." He further stated that the trial court erred by instructing the jury concerning aggravated rape because "there's three requisite mental states . . . if they could find me guilty of all three, which they did not find me guilty of all three." Because of his youth, the petitioner was aggrieved that his effective forty year sentence did not give him an opportunity to be rehabilitated and stated the sentence was, in effect, "telling [him] to die in the penitentiary."

Post-conviction counsel then referred to the petitioner's pro se petition for post conviction relief, which contained over thirty separate grounds for relief, and said "I am going to go through those main grounds with you." The Petitioner said that he was not advised about certain evidence presented against him at trial. Although he was "shocked" to see some of the evidence presented at trial, during the post conviction hearing, he was unable to recall any specific facts or evidence that he had not seen. The petitioner also alleged that counsel was not prepared for trial. He believed that counsel could have done more to help him and complained that he met with counsel twice prior to trial. He recalled that he met with counsel only "ten or twelve minutes" the day before trial to discuss a plea agreement. He did not want to accept a plea agreement or proceed with the trial at that point because he had not discussed the case with his family.

The petitioner also claimed that counsel failed to adequately investigate his case. He said that there was "fake evidence" presented during his trial. Specifically, the petitioner said that "they had three different pairs of shoes with supposedly one print, and I was wondering how they used three different pairs for one crime." He also complained that counsel failed to impanel a fair and impartial jury. In support of this claim, the petitioner said that he believed the jury contained "probably one" African-American juror. The petitioner also testified that his conviction was based on a coerced confession. With respect to this claim, the petitioner alleged that the police used his parents against him to convince him to confess. He conceded however that he did not provide a confession to the offense and "really just told [police] where some property was."

The petitioner also alleged that his offenses were based on an unconstitutional search and seizure of his parents' home. He believed that his parents were coerced into allowing the police to search their home based on police threats to "mess up [their] whole house." The

petitioner continued and simply restated his claims, as outlined in his petition, which included the following allegations: that he was unlawfully arrested, that his Fifth Amendment rights were violated, that the State failed to disclose favorable evidence, that his convictions violated double jeopardy, that trial counsel failed to file a motion to suppress, that the instant offenses were barred by the statute of limitations; that he was erroneously sentenced as a career offender, prosecutorial misconduct, and that the trial court committed various unspecified errors. Finally, when asked if he thought the outcome of his trial would have been different had he received effective assistance of counsel, the petitioner stated, "I believe I wouldn't have got as much time as I got . . . yeah, it would have been way different."

On cross-examination, the petitioner conceded that many of the issues upon which he sought relief were raised on direct appeal and rejected by this court. He acknowledged receiving a package of discovery but said that he was unable to review it with counsel. He received two letters from counsel and a notepad to communicate with counsel during his trial. He complained that the victim described the pants worn by her assailant as "dark [pants] with a white stripe" rather than the blue pants with an orange stripe found in his room. He said counsel failed to present "favorable evidence," which he described as cell phone records that verified a phone conversation he had with a friend during the time of the offense.

On redirect examination, the petitioner said he received ineffective assistance of appellate counsel. He explained that he "tried to input certain things" on appeal but was never able to meet with appellate counsel.

Counsel, a criminal defense attorney for nearly ten years, testified that he obtained discovery, determined whether motions needed to be filed, and reviewed the juvenile transfer hearing in this case. Although the instant case involved a minor defendant, counsel did not alter how he represented the petitioner. The petitioner was also charged with a "multitude of burglaries" and counsel prepared "ten variations of possible plea agreements." Ultimately, he was unable to obtain a global settlement because the victim "wanted her day in court." Following the convictions in this case, the petitioner pleaded guilty to the remaining offenses.

Counsel said that he met with the petitioner more than twice and discussed the case in greater detail than described by the petitioner. Counsel was certain that he provided discovery to the petitioner. Counsel testified that he was prepared for trial and did not recall any specifics of the investigation prior to trial. In regard to the petitioner's challenge to the racial make-up of the jury pool in Montgomery County, counsel said there was nothing unusual about the jury selection process and described it as "standard." Counsel did not specifically recall any basis upon which to file a motion to suppress any evidence in the case. To the extent that the petitioner alleged that counsel failed to investigate any mitigating evidence, counsel reviewed, at length, the petitioner's medical and juvenile records prior to

sentencing. Counsel also explained that he provided his clients with a notepad during trial so that he could focus on witness testimony. Although he considered any questions offered by his clients, including the petitioner, he rarely asked those questions and did not recall whether the petitioner offered any questions at trial. Counsel said that the petitioner never told him about any cell phone records that may have exonerated him. Counsel also recalled that the petitioner was sentenced as a Range I, standard offender.

On cross-examination, counsel said that "there were no surprises" at trial. He characterized the State's case against the petitioner as "extremely strong."

In denying relief, the post conviction court filed a detailed written order on September 24, 2012. It is from this order that the petitioner now appeals.[1]

## **ANALYSIS**

The petitioner contends that he received the ineffective assistance of counsel at trial based on counsel's (1) failure to adequately prepare for trial, (2) failure to meet with the petitioner prior to trial, (3) failure to object to certain evidence introduced at trial, and (4) failure to impanel a fair and impartial jury. He also contends that his "constitutional rights were violated based on his non-ineffective assistance claims." In response, the State contends that the post-conviction court properly denied the petition for post-conviction relief because the petitioner failed to prove that his trial counsel provided ineffective assistance of counsel and failed to prove a violation of any cognizable constitutional right. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held,

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim

---

[1] The State urges this court to dismiss this appeal as untimely because the record does not contain a notice of appeal. While the record from the Montgomery County Clerk does not contain the notice of appeal, the appellate court clerk record does. Accordingly, the petitioner has filed a timely notice of appeal and this case is properly before this court.

of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694).

**I. Ineffective Assistance of Counsel.** The petitioner contends that counsel failed to adequately prepare for trial because counsel met with him only twice prior to trial. The petitioner also contends that counsel failed to discuss with him or file a motion to suppress the gun and the pants recovered from his bedroom. As we understand his argument, the petitioner claims that introduction of this evidence was improper and that counsel should have objected to it at trial. The petitioner also contends that he was deprived of a fair and impartial jury because there was "probably one" African-American juror in the Montgomery County jury pool. At the post-conviction hearing, the petitioner testified as to the same allegations. Counsel said that he met with the petitioner more than twice, reviewed and investigated the possibility of a suppression motion, and found no basis to support such a motion. Although counsel did not dispute the petitioner's recollection of the jury make-up, counsel testified that there was nothing unusual about the jury selection process and described it as "standard." In its order denying relief, the post conviction court meticulously outlined the testimony adduced at the evidentiary hearing, accredited the testimony of counsel, and determined the petitioner to be not credible. As stated above, all questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999); State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Other than the petitioner's generalized complaints or statements of displeasure with the outcome of his case, none of these issues were developed to any material degree at the post-conviction hearing. The record amply supports the credibility determination of the post-conviction court. Accordingly, the petitioner has failed to demonstrate deficient performance of counsel or prejudice arising therefrom. He is not entitled to relief.

**II. Alleged Violation of Constitutional Rights.** In his brief to this court, the extent of the petitioner's argument on this issue is as follows:

> The Petitioner would assert that his constitutional rights were violated and that he is entitled to relief based on his non-ineffective assistance claims. These claims include arguments regarding a coerced confession, an unconstitutional search or seizure, an unlawful arrest, a violation of Petitioner's Fifth Amendment rights, a Brady violation, a double jeopardy violation, illegally obtained evidence, prosecution of this case beyond the limitations period, and prosecutorial misconduct.

In response to this issue, the State argues that the above issues should be considered waived due to the petitioner's failure to refer to the record, cite authority, or provide supporting argument. We agree with the State.

On appeal, a petitioner is required to support issues with appropriate reference to the record, supporting argument, and citation to authority. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."); see also State v. Hammons, 737 S.W.2d 549, 552 (Tenn. Crim. App.1987) (finding argument waived when the appellant failed to cite authority in support of his "abbreviated argument"). The petitioner's brief, in two sentences, does nothing more than list a number of allegations and summarily conclude that his constitutional rights were violated. See State v. Keller, 813 S.W.2d 146, 150 (Tenn. Crim. App.1991) ("Bald assertions unaccompanied by legal argument or citations to authorities are waived"). Although the petitioner directs this court to his statement of facts and avers that the reasons supporting the above issues are set forth with more particularity therein, such a practice does not satisfy Rule 10(b). Moreover, even if we attempted to overlook his non-compliance, reference to the petitioner's statement of facts does not facilitate appellate review of the above issues. Accordingly, we conclude that the above issues have been waived due to the petitioner's failure to provide sufficient reference to the record, argument, and authority.

## CONCLUSION

The judgment of the post-conviction court is affirmed.

_____

CAMILLE R. McMULLEN, JUDGE